**IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>**
*Southern Division*

|  |  |  |
|---|---|---|
| V. CHARLES DONNELLY, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Case No.: PWG-13-852 |
| BRANCH BANKING AND TRUST CO., | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**MEMORANDUM OPINION AND ORDER**</u>

This action arises out of a mortgage loan from Defendant Branch Banking and Trust Company ("BB&T") on a failed real estate investment, secured by a deed of trust on the investment property and guaranteed by Plaintiffs V. Charles Donnelly and Deborah A. Steffen and their co-investors. After continuing the previously scheduled trial and re-opening limited discovery, the case is currently set for trial to begin on Monday, July 11, 2016. *See* ECF No. 87. Donnelly has filed a letter requesting permission to file a motion to continue the trial yet again, Pl.'s Cont. Mot., ECF No. 93, which I have treated as a motion for a continuance of the trial, *see* ECF No. 94.[1] Because I have already continued the trial once and Donnelly has failed to provide sufficient justification for why I should continue the trial yet again, Donnelly's motion for a continuance of the trial is denied. At my direction, Plaintiffs have also filed supplemental briefing requesting that I reinstate their negligence claim against BB&T, which I previously dismissed on BB&T's motion for summary judgment, in light of documents that BB&T failed to

---

[1]   BB&T has filed an opposition, Cont. Opp'n, ECF No. 101, and Donnelly has filed a reply, Cont. Reply, ECF No. 103. A hearing is unnecessary. *See* Loc. R. 105.6.

produce initially and only produced after my summary judgment ruling. Pls.' Neg. Mot., ECF No. 86.[2] Because Plaintiffs have failed to demonstrate how the production of these new documents creates a tort duty after the execution of the February 2012 extension, Plaintiffs' motion to reinstate their negligence claim is denied.[3]

I.  BACKGROUND

I incorporate by reference the factual background discussed in my March 3, 2015, memorandum opinion, Summary Judg. Mem., ECF No. 62. This case was previously set for trial to begin on Tuesday, January 19, 2016. *See* Dec. 10, 2015, Letter Order, ECF No. 75. On January 14, 2016, Donnelly filed a motion to compel discovery, for sanctions, to re-open discovery, and to continue the trial and request a hearing. *See* ECF No. 79. On January 15, 2016, I held a conference call with the parties regarding Donnelly's motion. *See* Jan. 15, 2016, Letter Order, ECF No. 81. I granted Donnelly's motion for a continuance and ordered BB&T "to produce by February 1, 2016, any documents not already produced to Plaintiffs relating to (1) the draft loan extension and forbearance agreement produced by BB&T on January 6, 2016, and (2) the February 2012 extension agreement and Donnelly's execution of a deed of trust regarding his 10% ownership of Solomons Two with respect thereto." *Id.* I also permitted Plaintiffs to provide supplemental briefing on whether my dismissal of the negligence claim, *see* Summary Judg. Mem., ECF No. 62, "should be revisited in light of (i) the recent document productions, (ii)

---

[2]  Although stylized as a brief, I will treat Plaintiffs' filing as a motion for the reinstatement of his negligence claim. BB&T has filed an opposition, Neg. Opp'n, ECF No. 88, and Plaintiffs have filed a reply, Neg. Reply, ECF No. 91. A hearing in this matter is also unnecessary. *See* Loc. R. 105.6.

[3]  In Plaintiffs' reply regarding the reinstatement of the negligence claim, they also alleged instances of discovery fraud perpetrated by BB&T and requested relief from this Court. *See* Neg. Reply 6–9. I ordered BB&T to respond to these allegations, *see* ECF No. 92, which it did, *see* ECF No. 104. I will address this matter during the pre-trial conference scheduled for Friday, July 8, 2016, at 2:30 p.m. *See* ECF No. 105.

any future documents produced pursuant to this letter order, and (iii) the deposition(s) taken pursuant to this letter order." *Id.*

## II.   DISCUSSION

### A.   Motion for a Continuance of Trial

Donnelly has filed a motion for a continuance of trial on the basis of a Maryland Court of Special Appeals order remanding a related case to the Circuit Court for Calvert County to hear Donnelly's motion to revise judgment on the basis of alleged discovery wrongdoing on the part of BB&T.  *See* Pl.'s Cont. Mot.  Donnelly admits that this state court action is based on my January 15, 2016, Letter Order, which directed BB&T to produce additional documents relating to Plaintiffs' claims.  BB&T now has produced these documents, its former employee, Carol Taylor, was deposed regarding the recently produced documents, and I have ordered separate briefing in response to Donnelly's discovery fraud allegations.[4]  But these allegations do not relate to the substance of Donnelly's negligent misrepresentation claim, which is scheduled for trial starting on July 11, 2016.  Further, because I find that there is no basis to reinstate Plaintiffs' negligence claims based upon the belatedly produced documents, there is no need to postpone the trial a second time, particularly because Plaintiffs can use the produced documents and the deposition of Carol Taylor in presenting their negligent misrepresentation claim.  The postponement request therefore is denied.

### B.   Motion for Reinstatement of the Negligence Claim

#### 1.   *March 3, 2015, Memorandum Opinion*

---

[4]   I note that Donnelly did not raise discovery issues relating to BB&T's production of documents in a timely matter originally.  *See* June 27, 2014, Letter Order, ECF No. 53. Accordingly, I denied Donnelly's request for an extension of the discovery deadlines.  *Id.*

Because Plaintiffs seek reinstatement of their negligence claim, which I previously dismissed, I will reproduce my reasoning from my March 3, 2015, memorandum opinion below:

> It is "a longstanding principle of Maryland law that the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between a debtor and a creditor and is not fiduciary in nature." *Parker v. Columbia Bank*, 604 A.2d 521, 532 (Md. Ct. Spec. App. 1992). "'The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort.'" *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759 (Md. 1986) (quoting *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961)). Where, as here, "the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent." *Id.* at 759–60.
>
> The Maryland Court of Special Appeals has recognized four "special circumstances" that can give rise to a tort duty between a bank and its customer where
>
>> the lender "(1) took on any extra services on behalf of [the borrowers] other than furnishing the money for construction of a home; (2) received any greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control over the construction; or (4) was asked by [the borrowers] if there were any lien actions pending."
>
> *Parker*, 604 A.2d at 533 (quoting *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 656 P.2d 1089, 1094 (Wash. Ct. App. 1982) (alterations in original)).
>
> In considering BB&T's motion to dismiss (in the absence of any facts other than the allegations in the complaint), Judge Williams found that "it is conceivable that the transaction involving Plaintiffs' 10% interest in the Property could have imposed a duty of care on BB & T in subsequent refinancing negotiations." *Donnelly*, 971 F. Supp. 2d at 508–09. Indeed, obtaining additional security for the Loan by extracting a deed of trust on Donnelly's personal 10% interest in the Property constituted "greater economic benefit from the transaction" than was represented by the mortgage itself. And to the extent that executing the Donnelly Deed of Trust created a tort duty on the part of BB&T, that duty ran to Donnelly himself because it was Donnelly who provided the additional consideration. However, additional facts have been produced as a result of discovery and cited in the summary judgment filings that belie Plaintiffs' claims that the Donnelly Deed of Trust was extracted in the context of negotiations over the refinancing Plaintiffs sought.
>
> Plaintiffs' complaint was unclear about when BB&T had required Donnelly to execute the Donnelly Deed of Trust. Paragraph 10 of the Complaint contains allegations about the extension signed in February 2012, including that

the parties anticipated reassessing where the property stood when the Note matured in May 2012. Compl. ¶ 10. The next paragraph alleged that "[i]n late early February, 2012," Donnelly was told that he would need to execute a deed of trust on his personal interest as a precondition to BB&T "extending the current deed of trust and any subsequent extensions or modifications of the note when it matured." *Id.* ¶ 11. And in the following paragraph, Donnelly began detailing the chain of events leading up to the Modification Proposal in Spring of 2012. *Id.* ¶ 12. The implication of these allegations was that BB&T had required Donnelly to execute the Donnelly Deed of Trust after the February 2012 Extension but before negotiating any further extensions.

The record now makes clear that Donnelly executed the Donnelly Deed of Trust as a precondition to the February 2012 Extension—which then was granted by BB&T. Plaintiffs expressly acknowledge this in their memorandum. Pls.' Summ. J. Opp'n 22 ("[Donnelly] was told that it was a condition for the extension of the Note set for signing on February 17, 2012 and that its execution was required for any future note modifications."). To the extent that the Donnelly Deed of Trust constituted additional consideration on par with the payment of an application fee in *Jacques*, BB&T fulfilled their obligations when they gave fair consideration to—and granted—an extension of the Note in February 2012. Donnelly has not identified any further commitments by BB&T to provide any additional extensions of the Loan, nor has he shown that BB&T did not exercise reasonable care in considering his proposal to curtail the Loan and reduce the monthly payments. The mere fact that BB&T did not grant Donnelly an extension cannot establish the breach of a duty where there was no obligation to do so. *Cf. Jacques*, 515 A.2d at 562 ("[O]rdinarily a proprietor may refuse to do business with a person for any reason except race, color, creed, or national origin.").

Implicit in Plaintiffs' claims is the premise that having executed the Donnelly Deed of Trust as a condition for any subsequent modifications created a tort duty that lasted indefinitely into the future life of the Loan—a duty without any apparent limitation, as Plaintiffs conceive it. But "[c]ourts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Parker*, 604 A.2d at 532; *see also Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 778 (4th Cir. 2013) (same). Even crediting Steffen's claim that Taylor stated that BB&T was "in for the long haul" (whatever that means), Steffen Dep. (Pls.' Excerpts) 100:9, Pls.' Summ. J. Opp'n Ex. 11, ECF No. 54-3, that ambiguous statement was no more than an expression of desire that the parties continue to have future dealings, and therefore cannot form a basis for liability, *see Miller v. Fairchild Indus., Inc.*, 629 A.2d 1293, 1304 (Md. Ct. Spec. App. 1993). Plaintiffs cannot point to any application fee or other additional consideration demanded by BB&T and provided by them with respect to the proposed modification agreement, and Taylor's vague statement does not provide a sufficient basis to obligate BB&T to continue approving loan modifications indefinitely absent any consideration from Plaintiffs.

> Plaintiffs also argue that, by having Donnelly deal with Taylor as "the key person who dealt with troubled loans and borrowers under 'financial stress'" instead of Sucher, with whom he had a longstanding relationship, imposed upon BB&T on an obligation "beyond simply processing the underlying loan documents." Pls.' Summ. J. Opp'n 21. Yet Plaintiffs do not offer any explanation or legal authority for this position and I cannot see how BB&T's decision as to who would be Plaintiffs' point of contact possibly can affect their duties to Plaintiffs under the Note. Whatever the grounds for this argument, it does not support a tort duty for negligence. BB&T was subject to the same obligations irrespective of who was acting as its agent with respect to Plaintiffs.
> Although BB&T may have had a tort duty to consider the February 2012 Modification in good faith, there is nothing in the record to show that they did not do so and, in fact, BB&T granted the modification at that time. Having done so, the Donnelly Deed of Trust does not create a perpetual tort duty, nor is there any basis to find that BB&T did not give proper consideration to the modification proposal in the spring of 2012 in any event. Accordingly, BB&T owed no general negligence duty with respect to the Modification Proposal and is entitled to summary judgment with respect to Plaintiffs' negligence claim.

Summary Judg. Mem. 17–21 (footnotes omitted).

### 2. *Current Analysis*

Plaintiffs' supplemental briefing regarding the discovery subsequent to my March 3, 2015, memorandum opinion—document production and the deposition of Carol Taylor—fails to support reinstatement of their negligence claim. Although the documents and deposition testimony that Plaintiffs cite may be relevant to their negligent misrepresentation claim, they fail to address adequately the central aspect of my reasoning for dismissing their negligence claim: that even if there existed a fiduciary relationship due to Donnelly's execution of the Donnelly Deed of Trust, "BB&T fulfilled their obligations when they gave fair consideration to—and granted—an extension of the Note in February 2012." Summary Judg. Mem. 19.

Plaintiffs argue that

> BB&T's "recently produced documents" not only show a larger treatment and recognition of the effect of that Deed of Trust on Donnelly's relationship with BB&T, but shows the heightened responsibility owed Donnelly by BB&T regarding the direct relationship created by that Donnelly Deed of Trust and subsequent events surrounding the curtailment offer by Donnelly and BB&T's

6

actions in the immediate period following the breach of the agreement regarding the curtailment offer.

Neg. Reply 3. However, Plaintiffs fail to explain adequately how these "recently produced documents" create a tort duty that extended beyond the February 2012 Modification. Plaintiffs suggest without citing to any specific documents that the purpose of the February 2012 Modification was "to allow for new investors or a refinancing with another lender to take place." *See* Pls.' Neg. Mot. 12. Yet, even if it was true that BB&T agreed to the February 2012 Modification to allow Plaintiffs an opportunity to find new investors or a new lender during the period of time covered by the modification, it did not create a tort duty of perpetual duration as Plaintiffs seem to contend. In addition to failing to provide proper documentary support for this argument, the perpetual tort liability theory is one that I already rejected when I ruled that "the Donnelly Deed of Trust does not create a perpetual tort duty." Summary Judg. Mem. 21. Plaintiffs also argue that the newly produced documents provide support for "Donnelly's change in status from a mere guarantor to primarily liability [sic] on the Solomons Two loan" and as such "fits the class of 'special circumstances' wrestled with by the Court in *Jacques*." Pls.' Neg. Mot. 13. However, Plaintiffs fail to support these conclusory statements with any citations to the recently produced documents.[5]

The reasoning in my March 3, 2015, memorandum opinion continues to apply subsequent to the recent document production and deposition of Taylor:

> Donnelly has not identified any further commitments by BB&T to provide any additional extensions of the Loan, nor has he shown that BB&T did not exercise reasonable care in considering his proposal to curtail the Loan and reduce the monthly payments. The mere fact that BB&T did not grant Donnelly an

---

[5]  Plaintiffs also suggest that a tort duty exists because certain of the newly produced draft forbearance agreements refer to Donnelly and Steffen as "Borrowers." *See* Neg. Reply 5–6; Agr., Neg. Opp'n, Ex. 1, ECF No. 88-1. However, these references reflect Plaintiffs' status under the draft agreement *if* it had been executed, not Plaintiffs' status vis-à-vis BB&T as it existed in May and June 2012 during the negotiations.

7

extension cannot establish the breach of a duty where there was no obligation to do so.

Summary Judg. Mem. 19. Instead of explaining how the recently produced documents change my original analysis, Plaintiffs mostly rehash arguments that I previously rejected. Accordingly, Plaintiffs' motion to reinstate their negligence claim against BB&T is denied.

### III.  CONCLUSION

For the reasons stated above, Donnelly's motion for a continuance of trial is denied, and Plaintiffs' motion to reinstate their negligence claim against BB&T is also denied.

### ORDER

Accordingly, it is this 28th day of June, 2016, hereby ORDERED that Donnelly's motion for a continuance of trial, ECF No. 93, IS DENIED, and Plaintiffs' motion to reinstate their negligence claim against BB&T, ECF No. 86, IS DENIED.

So ordered.

                                                            /S/
                                          Paul W. Grimm
                                          United States District Judge

dpb